**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| **BRIAN J. WEEKS,**         ) | |
| ) | |
|        **Plaintiff,**     ) | |
| ) | |
| **v.**                 ) | **No. 1:09 CV 119** |
| ) | |
| **MARK E. HODGES (in his individual** ) | |
| **and official capacities as Sheriff of** ) | |
| **Whitley County), JAIL**       ) | |
| **COMMANDER SHAWN MARTIN** ) | |
| **(individual and official capacities),** ) | |
| **and OTHER "JOHN DOES/JANE** ) | |
| **DOES" (in their individual**    ) | |
| **capacities),**             ) | |
| ) | |
|        **Defendants.**    ) | |

## OPINION AND ORDER

This matter is before the court on defendants' motion for summary judgment.

(DE # 38.) For the reasons set forth below, defendants' motion is granted in part and

denied in part.

## I.     BACKGROUND

The following facts are not genuinely disputed.[1] Plaintiff was booked in Whitley

County Jail on February 21, 2008, as a pre-trial detainee, and was convicted on April 21,

2008.[2] (DE # 40-6 at 2.) The initial medical screening form completed on that date

---

[1] Defendants deny that plaintiff suffered from any condition. (DE # 40-1 at 2.)
However, the facts that follow are construed most favorably to plaintiff, the non-
moving party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998).

[2] Plaintiff has spent time in the Whitley County Jail on three different occasions.
(DE # 40-6 at 1.) The most recent period of incarceration, the stay which gave rise to the

indicated that plaintiff did not have any medical problems at that time. (DE # 45-4.)

Between March 14, 2008, and May 8, 2008, plaintiff submitted ten inmate request forms, none of which dealt with his teeth. (DE # 46 at 2; DE # 39 at 2.) The first indication that plaintiff gave anyone that he was having dental problems after being incarcerated came in late April 2008, when plaintiff told his mother that he was having tooth pain. (DE # 40-2 at 6.) On May 10, 2008, plaintiff filed his first inmate request form regarding his dental pain. (DE # 40-7 at 7.) That request, which was sent to defendant Sean Martin,[3] the jail commander, indicated that plaintiff's back wisdom teeth were coming in and pushing together, causing pain. (*Id.*) Plaintiff requested that he be allowed to see his family dentist before things got any worse. (*Id.*) He also indicated that he could pay for the bill to see his family dentist. (*Id.*) Plaintiff received a response the next day that told him that he could see the jail dentist the next time the dentist was at the facility. (*Id.*)

Two days later, on May 12, 2008, plaintiff filed another inmate request form, this time with the nurse, requesting to see a dentist as soon as possible because of the severe pain he was experiencing from his bottom teeth pushing together. (DE # 40-7 at 8.) In response, an appointment was scheduled with the jail dentist on the following day. (*Id.*)

events of this suit, started on February 21, 2008.

   [3] The docket sheet lists defendant Martin's first name as "Shawn." However, the correct spelling of Mr. Martin's first name is Sean. (DE # 40-6 at 1.)

On May 13, 2008, plaintiff saw Dr. Dennis Carter, the jail dentist, (DE # 40-7 at 5) and Dr. Carter made the following entry on plaintiff's chart:

> Dental Exam, # 17, mesial impaction, pt. has headaches daily, Amoxicillin 1000 mg o.f.d., # 20 bid needs to have # 17 extracted by an oral surgeon.

(*Id.*)

Plaintiff next submitted an inmate request form on May 15, 2008. (DE # 40-7 at 9.) In it, plaintiff reiterated that his teeth were really hurting him, inquired whether the jail commander, defendant Martin, had found out anything about his teeth, and expressed a desire to get the issue resolved as quickly as possible. (*Id.*) Although not mentioned specifically in that request form, plaintiff was seeking to get his tooth extracted. (DE # 45-2 at 10-11.) On the following day, defendant Martin responded, and told plaintiff that he was working on the issue. (DE # 40-7 at 9.)[4] Around this time, plaintiff began taking Ibuprofen for his pain and headaches. (DE # 45-2 at 11-12.)

At some point in May 2008, defendant's mother was contacted by the jail commander Sean Martin. (DE # 40-2 at 5.) They discussed plaintiff's dental problem, and Martin told plaintiff's mother that she needed to make plaintiff an appointment with an oral surgeon. (*Id.*) After her conversation with Martin, plaintiff's mother scheduled an appointment with an oral surgeon for May 23, 2008. (DE # 1 at 10.)

---

[4] Plaintiff also filed an undated inmate request form informing defendant Martin of his dentist's name and his mother's work phone number. (DE # 40-7 at 10.) Defendant Martin replied on May 15, 2008, telling plaintiff that his mother had been contacted and was working on getting everything resolved. (*Id.*)

The next inmate request form plaintiff submitted was on May 20, 2008. (DE # 40-7 at 11.) In that request, plaintiff again informed the jail commander, defendant Martin, that his teeth were hurting him and inquired about the date of his appointment. (*Id.*) On the following day, the jail commander informed plaintiff that the jail would provide transportation for him to see the oral surgeon on May 23, 2008. (*Id.*) However, before plaintiff's appointment with the oral surgeon, plaintiff's mother canceled the appointment because the oral surgeon's office wanted a down payment of one-third of the cost of the surgery. (DE # 40-2 at 5-6.) Plaintiff's mother could not afford to pay for the surgery herself, and she did not know who was going to pay it. (*Id.*; DE # 1 at 9-10.)

On May 20, 2008, plaintiff's mother wrote a letter to defendant Hodges regarding the situation with the oral surgeon. In it, plaintiff's mother explained that she could not pay for the dental care herself, informing Hodges that plaintiff was "basically indigent," and expressing disbelief over the fact that plaintiff's dental problems had not yet been resolved. (DE # 1 at 9-10; DE # 45-11 at 3-4.)

On May 22, 2008, defendant Hodges responded to plaintiff's mother, informing her that he and defendant Martin were checking with the oral surgeon to "determine responsibility." (DE # 1 at 11.) On May 25, 2008, plaintiff wrote the nurse requesting that Ibuprofen be made available to him again as his teeth were "really hurting." (DE # 40-7 at 12.) The nurse responded informing plaintiff that he would be given ten doses of Ibuprofen for a thirty-day period. (*Id.*) On June 8, 2008, in an inmate request form sent to the nurse, plaintiff requested more Ibuprofen and indicated again that his

4

teeth hurt "on a regular basis." (DE # 40-7 at 13.) The nurse responded that she would put the Ibuprofen back on the medicine cart for plaintiff. (*Id.*)

During his deposition, defendant testified that at some point after plaintiff's initial visit with Dr. Carter, plaintiff spoke with both defendants individually. (DE # 40-1 at 8.) When he spoke with each defendant, plaintiff informed them that the dentist had told him that he needed to have his wisdom tooth removed. (*Id.*) Both defendants indicated they would get the matter taken care of. (*Id.*)

On June 11, 2008, plaintiff's mother wrote to defendant Hodges again. (DE # 1 at 14-15.) Plaintiff's mother informed Hodges that plaintiff was still having dental problems and that although she had rescheduled the original dental appointment, she had to cancel the rescheduled appointment due to her inability to pay. (DE # 1 at 14-15) She also requested that Hodges give her a definitive answer on whether Whitley County ("the County") was going to pay for the procedure. (*Id.*) Instead of directly responding to her letter, Hodges informed plaintiff that he could see Dr. Carter, the jail dentist, the next time Dr. Carter was at the jail. (DE # 45-11 at 10.)

On July 23, 2008, plaintiff saw Dr. Carter, the prison dentist, once more. (DE # 40-7 at 5.) Dr. Carter's notes from that meeting indicate that tooth # 17 was still impacted, but that plaintiff suffered only occasional pain, and was not in pain on the day of the exam. (*Id.*) Later that day, Dr. Carter met with defendant Hodges and a jail nurse to discuss plaintiff's condition. (DE # 40-3 at 4.) Dr. Carter indicated that the tooth did not need to be removed immediately, and that the downside to removing the tooth would

be a fifty-percent chance of a dry socket[5] appearing. (*Id.*) Dr. Carter suggested that the best course was to treat any future infections with antibiotics until antibiotics were no longer effective. (DE # 40-3 at 4.) Dr. Carter also stated that the wisdom tooth was not causing plaintiff's front teeth to move. (*Id.*) Hodges concluded that plaintiff would be examined by Dr. Carter every time Dr. Carter visited the jail. (*Id.*)

Plaintiff's mother sent Hodges another letter on July 30, 2008. (DE # 1 at 16-17.) In that letter, plaintiff's mother explained her son's situation again, emphasizing that plaintiff's dental condition had caused him extreme pain. (DE # 1 at 16-17) She inquired as to why her son's tooth had not been removed, and also asked why the jail's policy required her son to pay for his own treatment. (*Id.*) Hodges responded with a short note indicating that portions of plaintiff's mother's letter were not correct. (DE # 45-11 at 11-12.)

From July 8, 2008, to August 20, 2008, defendant submitted several more inmate request forms. (DE # 40-7 at 14-21, 23-24; DE # 45-12 at 1-4.) Although only two of those dealt with his dental condition (requesting dental records and more Ibuprofen) (DE # 40-7 at 23-34), several of them were submitted by plaintiff in an attempt to get switched to the Indiana Department of Corrections ("DOC"). (DE # 45-12 at 1-4.) Plaintiff wanted to be moved to the DOC because he did not believe the County was going to take care of his tooth, but he believed that the DOC would. (*See* DE # 40-1 at 4.)

---

[5] A dry socket is "[a]n inflamed, painful condition of a tooth socket after the tooth has been extracted." WEBSTER'S II: NEW COLLEGE DICTIONARY 349 (1999).

Plaintiff also wrote a letter to Judge James Heuer, of the Whitley County Circuit Court. (DE # 40-7 at 22.) In that letter, plaintiff asked Judge Heuer to make sure he was transferred to the DOC so he could complete his work release and community service, and so he could get his dental problem resolved. (*Id.*)

Plaintiff was transferred out of the Whitley County Jail on August 27, 2008. (DE # 40-3 at 2.) When he eventually made it to Miami Correctional Facility on September 26, 2008,[6] plaintiff requested a dental appointment on account of the pain in his teeth. (DE # 46 at 6-7; DE # 45-16 at 1.) On September 30, 2008, four days after plaintiff submitted his request, plaintiff's impacted wisdom tooth was extracted. (DE # 46 at 7; DE # 39 at 7; DE # 45-17 at 1.) An oral surgeon performed the extraction at a DOC facility. (DE # 46 at 7.) Plaintiff was charged $5.00 for the operation. (*Id.*)

Plaintiff has since brought suit against defendants under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. (DE # 1 at 6.) Defendants have moved for summary judgment on all claims. (DE # 38.)

II.  **LEGAL STANDARD**

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.

_____

[6] Plaintiff was held for thirty days at holding center before finally getting to the Indiana DOC. (DE # 40-2 at 8.)

317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at

255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

III.    **ANALYSIS**

A.    **Eighth Amendment Individual Capacity Claims**

Plaintiff has sued defendant Hodges and defendant Martin in both their individual and official capacities claiming that defendants violated his Eighth Amendment rights. The court will begin its analysis with plaintiff's individual capacity claims.

The Eighth Amendment prevents the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. "The Eighth Amendment's prohibition against cruel and unusual punishment, which embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency,' prohibits punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 102 (1976)). "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and

suffering which no one suggests would serve any penological purpose.'" *Id.* (quoting

*Estelle*, 429 U.S. at 103). Prison officials violate the Eighth Amendment if they are

"deliberately indifferent to prisoners' serious medical needs." *Arnett v. Webster*, 658 F.3d

742, 750 (7th Cir. 2011). Thus, for a plaintiff to succeed on a claim for deficient medical

care, the plaintiff has the burden of proving two elements: "1) an objectively serious

medical condition; and 2) an official's deliberate indifference to that condition."*Id.*; *see*

*also Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003).

"A medical need is considered sufficiently serious if the inmate's condition 'has

been diagnosed by a physician as mandating treatment or . . . is so obvious that even a

lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea*, 631 F.3d 843,

857 (7th Cir. 2011) (quoting *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005)). "A

medical condition need not be life-threatening to be serious; rather, it could be a

condition that would result in further significant injury or unnecessary and wanton

infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The Seventh Circuit has stated that "'dental care is one of the most important

medical needs of inmates.'" *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (quoting

*Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001)). The Seventh Circuit and district

courts sitting in the Seventh Circuit have, on multiple occasions, recognized that serious

dental pain accompanied by other symptoms can constitute an objectively serious

medical condition. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (evidence of

tooth decay accompanied by serious pain sufficient to survive motion for summary

judgment); *Hoeft v. Menos*, 347 F. App'x 225, 227 (7th Cir. 2009) ("six months of extensive pain from untreated cavities and tooth loss that prevented him from properly chewing his food . . . qualify as a serious medical condition"); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (allegations of failure to provide dentures that resulted in difficulty chewing food, bleeding, and headaches sufficient to survive motion to dismiss); *Fisher v. Miller*, No. 3:11–CV–383 RM, 2011 WL 6056616, at *2 (N.D. Ind. Dec. 6, 2011) (allegations of months of excruciating tooth pain that interfered with ability to eat and resulted in the loss of a tooth sufficient to allege a serious medical condition).

Although not discussed at length in either parties' briefs, defendants have not met their initial burden on this element. The facts here, construed most favorably to plaintiff, show that plaintiff had extreme dental pain over the course of weeks and possibly months, accompanied by headaches (DE # 40-7 at 5), difficulty chewing (*See* 40-1 at 6), and loss of sleep. (DE # 40-2 at 9.) Additionally, this condition was "diagnosed by a physician as mandating treatment[,]" *Elyea*, 631 F.3d at 857, as evidenced by the fact that Dr. Carter, after the first time he examined plaintiff, wrote on plaintiff's chart that "# 17 needs to be extracted by an oral surgeon." (DE # 40-7 at 5.) This evidence is sufficient to create a genuine issue of material fact that plaintiff's dental problem had become an objectively serious medical condition.

The parties devote the majority of their briefs to arguing about the second element: whether defendants were deliberately indifferent to plaintiff's condition. *Arnett*, 658 F.3d at 750. Plaintiff advances two theories on how defendants were

11

deliberately indifferent. First, plaintiff argues that defendants showed deliberate indifference because they knew that Dr. Carter had determined that plaintiff needed to have his wisdom tooth removed but refused to provide the treatment Dr. Carter ordered. (DE # 46 at 13.) Second, plaintiff argues that defendants showed deliberate indifference by refusing to provide the prescribed treatment because plaintiff could not pay for it himself. (*Id.*)

"Deliberate indifference is a subjective standard." *Arnett*, 658 F.3d at 751. Under this standard:

> [C]onduct is "deliberately indifferent" when the official has acted in an intentional or criminally reckless manner, *i.e.,* "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'"

*Farnham*, 394 F.3d at 478 (quoting *Armstrong v. Squadrito,* 152 F.3d 564, 577 (7th Cir. 1998)). "Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care." *Elyea*, 631 F.3d at 857. "'[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk.'" *Id.* (quoting *Greeno,* 414 F.3d at 653).

The Seventh Circuit has held that evidence that a prison doctor ignored an outside specialist's instructions for a prison inmate is sufficient to survive a motion for summary judgment on a deliberate indifference claim. *Gil v. Reed*, 381 F.3d 649, 661-64 (7th Cir. 2004). In *Gil v. Reed*, the plaintiff, a prisoner who had a myriad of digestive

system illnesses, saw a specialist who prescribed several medications and warned the plaintiff to avoid certain medications that would exasperate his condition. *Id.* at 653. The defendant, the doctor at the prison in which plaintiff was housed, ignored a portion of the specialist's instructions, and gave the plaintiff the painkiller the plaintiff was told to avoid even though he knew of the specialist's warning, causing further problems. *Id.* at 653-54. The Seventh Circuit held that the defendant's refusal to follow the specialist's treatment plan demonstrated there was a genuine issue of material fact as to whether the defendant was deliberately indifferent to the plaintiff's medical needs. *Id.* at 663-64.

Other federal appellate courts have held that the refusal of prison medical and administrative staff to adhere to doctor's orders regarding inmates can constitute deliberate indifference. *See, e.g., Arocho v. Nafziger*, 367 F. App'x 942, 952 (10th Cir. 2010) (allegations that prison administrator refused to approve treatment that clinical director had recommended for inmate sufficient to state a plausible deliberate indifference claim); *Webb v. Douglas Cnty.*, 224 F. App'x 647, 649 (9th Cir. 2007) ("The law in this circuit is clearly established that a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon." (quotations omitted)); *Lawson v. Dallas Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002) (prison nurses acted with deliberate indifference by ignoring doctor's orders for inmate); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors."). The Supreme Court

has also noted that a prison guard may be deliberately indifferent if he or she interferes with prisoner's access to prescribed medical treatment:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, 96 S. Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. *This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.* Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 104-05 (emphasis added). Thus, a prison official may be deliberately indifferent if the prison official knows about a doctor's specific prescribed treatment for an inmate and does not facilitate that treatment.

Additionally, a prison official that conditions medical treatment on a prisoner's ability to pay may be deliberately indifferent. *Martin v. Debruyn*, 880 F. Supp. 610, 615 (N.D. Ind. 1995) ("A prison official who withholds necessary medical care, for want of payment, from an inmate who could not pay would violate the inmate's constitutional rights if the inmate's medical needs were serious . . . ."), *aff'd*, No. 96-2833, 1997 WL 295303 (7th Cir. 1997); *see also Cannon v. Mason*, 340 F. App'x 495, 499 n.3 (10th Cir. 2009) ("[A]n Eighth Amendment violation concerning medical charges only occurs if prison officials deny an inmate medical treatment due to a lack of funds or condition the provision of needed medical services upon an inmate's ability to pay . . . ."); *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d. Cir. 1987) ("[Prison officials may not] condition provision of needed medical services on the inmate's ability

or willingness to pay."); *Ancata v. Prison Health Servs. Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("Delay in medical treatment cannot be justified as a means to coerce payment.").

When plaintiff's dental problem first became known to defendants, plaintiff was allowed to see the jail's dentist, Dr. Carter, within three days of making his problem known to defendant Martin. (DE # 40-7 at 5, 7.) After plaintiff had his initial visit with Dr. Carter, Dr. Carter wrote on plaintiff's chart that "# 17 needs to be extracted by an oral surgeon." (DE # 40-7 at 5.)

After that, plaintiff's mother and defendant Martin spoke and plaintiff's mother made an appointment with an oral surgeon. (DE # 40-2 at 5-6.) However, plaintiff's mother ended up canceling the appointment because she could not pay for the surgery herself and did not know who would pay for it. (*Id.*; DE # 1 at 9-10.) Although the exact date plaintiff's mother canceled the appointment is not clear, she wrote defendant Hodges a letter on May 20, 2008. (DE # 1 at 9-10.) That letter indicated that neither she nor her son could afford to pay for the procedure, and asked for an explanation of why the County was not going to cover the cost of the procedure. (*Id.*) Defendant Hodges responded a few days later indicating that he and defendant Martin were looking into the issue to "determine responsibility." (*Id.* at 11.)

At this point, defendants became much less accommodating to plaintiff's dental needs. Despite being informed by plaintiff's mother that neither she nor her son could pay for this procedure, and despite Dr. Carter's diagnosis that plaintiff needed to have

his tooth removed, defendants made no effort to ensure that plaintiff's dental problem was taken care of.

Plaintiff complained about his teeth again on June 8, 2008. (DE # 40-7 at 14.) This time, he complained to the nurse, and noted that his teeth hurt on a "regular basis." (*Id*.) On June 11, 2008, plaintiff's mother wrote defendant Hodges again. (DE # 1 at 14-15.) She informed Hodges that plaintiff continued to have dental problems, and that although she had rescheduled the initial appointment, she had to cancel it because she still lacked the ability to pay for it. (*Id*.) She also stated that plaintiff had not heard anything about whether the County was going to pay for the procedure, and again requested an explanation of what was happening with the procedure and why the jail administrators had not informed plaintiff or his mother of whether the County was going to cover the cost of the procedure. (*Id*.) The only action that was taken by jail administrators (other than providing Ibuprofen) after this point was to schedule another appointment for plaintiff with Dr. Carter, the jail dentist. (DE # 40-3 at 3-4.)

These facts, taken together, could allow a reasonable jury to infer that either or both of the defendants acted with deliberate indifference. The facts most favorable to plaintiff show that both defendants knew of Dr. Carter's diagnosis and both defendants knew that plaintiff was in extreme pain. (DE # 40-1 at 8.) Although they were initially accommodating, once it became clear that neither plaintiff nor his mother were going to pay for the procedure, no action was taken by either defendant to try to follow through on Dr. Carter's diagnosis that plaintiff needed to have his wisdom tooth removed. A

reasonable jury could find that defendants were deliberately indifferent by failing to follow Dr. Carter's orders when they knew plaintiff was in extreme pain, thus unnecessarily prolonging plaintiff's pain, or by failing to provide plaintiff the proper medical treatment because he could not pay for it himself.

In their reply brief, defendants argue that because plaintiff has not shown that his dental condition was worsened by the delay in treatment, defendants' motion for summary judgment should be granted. (DE # 50 at 1-2.) However, "even if [plaintiff's] condition did not worsen from the delay [in treatment], deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Knox Cnty. Jail*, 666 F.3d at 1039-1040. "'[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* at 1040 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Id.; compare id.* at 1040 (plaintiff stated a deliberate indifference claim by that alleging bleeding, vomiting, dizziness, and severe pain that went untreated for a period of five days); *and Rodriguez*, 577 F.3d at 832 (four-day delay in treatment for extreme pain caused by IV sufficient to state a deliberate indifference claim); *and Grieveson v. Anderson*, 538 F.3d 763, 779-80 (7th Cir. 2008) (evidence that guards waited one-and-a-half days to arrange for medical treatment for prisoner that had broken nose sufficient to survive motion for summary judgment); *and Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007) (allegations of prisoner with severely

dislocated finger being refused treatment for two days sufficient to reverse district court's dismissal); *with Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (six-day delay in treatment for prisoner with mild cyst infection insufficient to survive a motion for judgment on the pleadings). Even if plaintiff has not shown that his dental condition was worsened because of a delay in treatment, the evidence presented does show he was in extreme pain[7] and was not provided the treatment prescribed by Dr. Carter. Therefore, defendants' argument here fails.

Defendants also argue that plaintiff simply had a mere difference of opinion with respect to the proper course of his treatment. (DE # 39 at 16.) However, plaintiff did not have a difference of opinion with Dr. Carter. Dr. Carter ordered that plaintiff have an oral surgeon remove one of his wisdom teeth, and that order remained standing for over two months. Far from having a difference of opinion with Dr. Carter's diagnosis, plaintiff desired the course of treatment that Dr. Carter ordered.

Defendants make several factual arguments as to why summary judgment should be granted in their favor. However, these arguments support the court's conclusion that there is an issue of fact as to whether defendants were deliberately indifferent, as they show that there is a question of fact as to defendants' state of mind regarding plaintiff's dental care.

---

[7] At his deposition, plaintiff testified that some days were better than others when it came to the pain caused by his impacted wisdom tooth, and on a scale of one to ten, no day was ever better than an eight. (DE # 40-1 at 8.)

Defendants' first argument as to why they could not have been deliberately indifferent is that plaintiff was given treatment throughout the months of May, June, and July of 2008. (DE # 39 at 15.) Defendants point to the fact that plaintiff saw the dentist twice, plaintiff did not require a special diet, plaintiff told Dr. Carter that his pain was only occasional, there was a period of time when plaintiff made no complaints about his teeth, and that Dr. Carter told defendant Hodges that plaintiff's condition was not dire. (*Id.*)

On May 13, 2008, Dr. Carter indicated that plaintiff needed to have his wisdom tooth removed. (DE # 40-7 at 5.) Although plaintiff did have another appointment with Dr. Carter where he indicated that he had only occasional pain and Dr. Carter determined that plaintiff did not need to have his wisdom tooth extracted immediately, that appointment took place over two months after plaintiff's initial appointment with Dr. Carter. (*Id.*; DE # 40-3 at 4.) It is true, that as non-medical prison administrators, defendants were allowed to defer to the judgment of health care professionals, *Peterman*, 604 F.3d at 440. In this case, however, defendants did not defer to Dr. Carter. From May 13 until July 23, the only diagnosis that Dr. Carter had given for plaintiff was that he had to have his wisdom tooth removed. The only other updates during that time on plaintiff's dental health were from plaintiff and his mother indicating that plaintiff was in pain and needed to have his wisdom tooth removed.

Defendants also argue that there was no indication from Dr. Carter that the tooth extraction had to be done immediately. (DE # 39 at 3.) However, despite their

19

knowledge of plaintiff's extreme pain and Dr. Carter's diagnosis that the tooth had to be extracted, neither defendant contacted Dr. Carter to determine if immediate extraction was necessary. Instead, with the knowledge that plaintiff was in extreme pain, they waited over two months to ask Dr. Carter about the urgency of the extraction.

Defendants also argue that plaintiff's deliberate indifference claim must fail because defendants are not under a duty to pay for a prisoner's medical care if that prisoner can pay for it himself. (DE # 54.) Defendants point to plaintiff's first inmate request form regarding his teeth, where plaintiff requested to see his family dentist, and wrote that he could pay for the bill himself. (DE # 40-7 at 7.) Defendants argue that they were under the impression that plaintiff or his mother were going to pay for plaintiff to have his wisdom tooth extracted. (DE # 54 at 2.) However, the facts presented conflict with this argument in two ways.

First, the inmate request form in which plaintiff indicated that he could pay for his dental treatment was the first inmate request form plaintiff submitted regarding his dental issues. (DE # 40-7 at 7.) At that point, defendants were not aware that oral surgery was required. The only thing that request form indicated was that plaintiff could pay to see his family dentist. There is no indication, however, that this meant plaintiff could also pay for the oral surgery that Dr. Carter eventually recommended. Second, this argument is directly refuted by plaintiff's mother's letters to defendant

Hodges in May and June 2008, where she explicitly told defendant Hodges that neither she nor her son could pay for the procedure. (DE # 1 at 9-10; DE # 1 at 14-15.)

In short, defendants have failed to meet their initial burden on showing there is no issue of fact as to whether plaintiff had an objectively serious medical condition and whether defendants were deliberately indifferent toward that condition, and therefore, defendants have failed to meet their initial burden on plaintiff's individual capacity claims.

### B. Eighth Amendment Official Capacity Claims

Plaintiff also contends that defendants are liable for having an unconstitutional policy of denying medical treatment to prisoners or conditioning the receipt of medical treatment on a prisoner's ability to pay for that treatment. (DE # 1 at 5-6.) Suits against county officials in their official capacities are treated as suits against the County itself. *Grieveson*, 538 F.3d at 771; *Rome v. Myers*, 353 F. App'x 35, 36 (7th Cir. 2009). Thus, plaintiff's claim against defendants in their official capacities is treated as a claim against Whitley County.

"Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson*, 538 F.3d at 771. "The 'official policy' requirement for liability under § 1983 is to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the

municipality is actually responsible." *Id.* (quotations and citations omitted) (emphasis in original).

A plaintiff can establish municipal liability under Section 1983 by producing evidence of:

> "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."

*Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)).

The express policy theory applies when a plaintiff can point to an explicit policy or an omission in a policy that violates a constitutional right. *Calhoun v. Ramsey*, 408 F.3d 375, 379-80 (7th Cir. 2005). The Whitely County Jail does have a written policy for the treatment of inmates' medical issues (DE # 40-4 at 3), but plaintiff does not contend that this express policy caused the harm that he suffered. Plaintiff appears to be arguing that defendants are liable in their official capacities in two ways: the jail had a widespread practice of refusing inmates medical care unless the inmates could pay for it themselves and that defendant Hodges, the person with final policymaking authority, caused his injury. (DE # 1 at 5-6; DE # 46 at 19.)

Defendants have met their initial burden on their motion for summary judgment by pointing out a lack of evidence regarding any widespread practice that caused plaintiff's constitutional violations. (DE # 39 at 20.) Because defendants have made this

initial showing, the burden shifts to plaintiff to come forward with specific facts demonstrating that there is a genuine issue for trial. *Carmichael,* 605 F.3d at 460. Plaintiff has failed to meet this burden as to a widespread practice.

Plaintiff has provided no evidence of the Whitley County Jail refusing to provide medical or dental care to other inmates or refusing to provide medical or dental care to other inmates unless the inmates pay for the treatment themselves. In fact, plaintiff does not even argue that this policy has been carried out with respect to other inmates. While it is not impossible for a plaintiff to show the existence of a policy or custom based on his own experience, it is significantly more difficult. *Grieveson*, 538 F.3d at 774.

Here, plaintiff has alleged one incident of the Whitley County Jail refusing medical treatment because plaintiff could not pay for it himself. Plaintiff does not allege that this happened to him more than once or that other inmates were affected by this practice. In this case, plaintiff's evidence of this one incident is insufficient to create an issue of material fact as to whether this practice was widespread. *See, e.g., id.* at 774-75 (four incidents of plaintiff being given medication bottle all in one lot not sufficient to create an issue of material fact); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759-60 (7th Cir. 2005) (three incidents of improper use of pepper spray not sufficient to constitute a widespread practice); *Palmer v. Marion Cnty.*, 327 F.3d 588, 595-96 (7th Cir. 2003) (two incidents of observing inmate-on-inmate violence where guards failed to intervene not sufficient to constitute widespread practice). In short, plaintiff has failed

to create a genuine issue of material fact regarding the existence of a widespread practice, and cannot rest his official capacity claim against the County on this theory.

Plaintiff is left with the theory that his injury was caused by a person with final policymaking authority. Here, plaintiff argues that defendant Hodges, the Whitley County Sheriff, had final policymaking authority for the Whitley County Sheriff's Department. (DE # 46 at 19.) However, defendants have not put forth any evidence or any argument that Hodges was not a final policymaker or was not the official policymaker for "the area of governance in question." *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). Defendants did not address this aspect of plaintiff's claim at all, and therefore, did not meet their initial burden on their own motion for summary judgment.

Because plaintiff's official capacity claim will proceed only under the final policymaker theory, defendant Martin is granted summary judgment on plaintiff's official capacity claim against him. However, plaintiff's allegation that Hodges was a final policymaker and caused plaintiff's constitutional injury survives as a possible theory of recovery, and defendant Hodges is not entitled to summary judgment on plaintiff's official capacity claim.

### C. Qualified Immunity

Summary judgment may still be appropriate for the individual defendants if they are entitled to qualified immunity. "Government officials performing discretionary functions enjoy qualified immunity from suit to the extent that their conduct 'could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013 (7th Cir. 2006) (quoting

*Anderson v. Creighton,* 483 U.S. 635, 638–39 (1987)). "Qualified immunity protects a defendant from liability as well as from the burden of standing trial." *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). The court must conduct a two-step inquiry when evaluating a qualified immunity claim: "'First the court must determine whether the disputed conduct, as alleged, violates a constitutional right; second, the court must determine whether that right was 'clearly established' at the time of the alleged conduct.'" *Id.* (quoting *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005)). Plaintiff has the burden of establishing these elements. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). The court may address these prongs in any order. *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012).

First, the court will determine whether these constitutional rights were clearly established in 2008, at the time of the alleged conduct. For a constitutional right to be clearly established:

> [T]he "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*McAllister v. Price*, 615 F.3d 877, 884-85 (7th Cir. 2010) (quoting *Creighton,* 483 U.S. at 640); *see also Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008) ("'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001))).

A plaintiff can "demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the [d]efendants' conduct was unconstitutional or by presenting evidence that the [d]efendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779-80 (7th Cir. 2010) The "salient question" for finding a closely analogous case is "whether the state of the law at the relevant time gave the [d]efendants fair warning that their treatment of [the plaintiff] was unconstitutional." *Id.* at 781. When looking for a closely analogous case to determine if a constitutional right was clearly established, the court must first look to binding precedent from the Supreme Court and the Seventh Circuit. *Id.* If there is no controlling precedent, the court must then broaden its search to include all relevant case law. *Id.*

 If a plaintiff does not identify a case directly on point, the plaintiff may still meet this burden if "'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 471 (7th Cir. 2011) (quoting *Ashcroft v. al-Kidd,* ––– U.S. ––––, 131 S. Ct. 2074, 2083 (2011)).

Plaintiff contends that the cases he cites in his response to defendants' motion for summary judgment clearly establish a constitutional right to adequate dental care and a constitutional right to receive medical care despite being indigent. (DE # 46 at 19.)

Specifically, plaintiff cites a line of cases which lead the court to the 2005 case of *Board v. Farnham*, in which the Seventh Circuit stated that "'dental care is one of the most important medical needs of inmates.'" 394 F.3d at 480 (quoting *Wynn,* 251 F.3d at

593). In that case, the court held that the defendant, who had allegedly denied the plaintiff's access to toothpaste for an extended period of time, was not entitled to qualified immunity because defendant was or should have been on notice that it would be unconstitutional to deny toothpaste for an extended period of time. *Id.* at 483-44. Additionally, in the 2001 case *Wynn v. Southward,* the Seventh Circuit recognized that a plaintiff who alleged a prison official's failure to provide plaintiff's dentures that resulted in headaches, the inability to chew, bleeding, and disfigurement stated a serious medical need. 251 F.3d at 593; *see also McCue v. Aldridge*, No. 3:05-cv-554-DRH, 2007 WL 2570380, at *23 (S.D. Ill. Sept. 4, 2007) (citing to *Wynn* and concluding that "it cannot be said that the right to adequate . . . dental care was not clearly established in the year 2004."). Plaintiff's argument is well taken. Even if this Seventh Circuit precedent did not clearly establish a constitutional right to adequate dental care, cases from other circuits also indicate that this is a clearly established right. *See, e.g., Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989); *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980).

The right to medical care for an indigent inmate was also clearly established in 2008. Plaintiff cites several Seventh Circuit district court cases for this proposition. *See Debruyn*, 880 F. Supp. at 615 ("A prison official who withholds necessary medical care, for want of payment, from an inmate who could not pay would violate the inmate's constitutional rights if the inmate's medical needs were serious . . ."); *see also Spates v. Schultz*, No. 2001 C 50127, 2001 WL 789413, at *2 (N.D. Ill. July 12, 2001) ("Prisoners may be charged for medical care as long as necessary medical care is not denied to those

unable to pay for it."). Although not binding on this court, these decisions and several decisions from other circuits show that an indigent inmate has a constitutional right to adequate medical or dental care, and that a prison may not condition treatment on the inmate's ability to pay. *See, e.g.*, *Cannon v. Mason*, 340 F. App'x 495, 498 (10th Cir. 2009) ("The Eighth Amendment prohibits prison officials from denying an inmate medical treatment due to a lack of funds or conditioning the provision of needed medical services upon an inmate's ability to pay."); *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d. Cir. 1987) ("[Prison officials may not] condition provision of needed medical services on the inmate's ability or willingness to pay."); *Ancata v. Prison Health Servs. Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("Delay in medical treatment cannot be justified as a means to coerce payment.").

In sum, plaintiff has demonstrated that defendants were or should have been on notice that it would be unconstitutional to deny plaintiff adequate dental care or condition the receipt of adequate dental care on the plaintiff's ability to pay for it. *Farnham*, 394 F.3d at 484. In doing so, plaintiff has satisfied the second prong of the qualified immunity test set out in *Borello*. 446 F.3d at 746.

Next, the court must determine whether the facts construed most favorably to plaintiff show a violation of a constitutional right. "When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). As noted above, issues of fact exist as to plaintiff's Eighth Amendment claims. The qualified

28

immunity analysis cannot be disentangled from those disputed facts, and therefore, the

defendants are not entitled to qualified immunity at this stage of the litigation.[8]

## IV.    CONCLUSION

For the foregoing reasons:

1. The portions of defendants' motion for summary judgment that relate to plaintiff's claims against defendant Mark Hodges (DE # 38) are **DENIED**.

2. The portion of defendants' motion for summary judgment that relates to plaintiff's individual capacity claim against defendant Sean Martin (DE # 38) is **DENIED**.

3. The portion of defendants' motion for summary judgment that relates to plaintiff's official capacity claim against defendant Sean Martin (DE # 38) is **GRANTED**.

**SO ORDERED.**

Date: May 10, 2012

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[8] Additionally, Hodges is not entitled to qualified immunity on plaintiff's official capacity claim. A "suit against an individual in his or her official capacity is a suit against the municipality, and a municipality does not enjoy qualified immunity from a damage claim under 42 U.S.C. § 1983." *Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998). Thus, as to plaintiff's official capacity claim against defendant Hodges, Hodges is not entitled to qualified immunity.